IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRANCE BARKER, MICHELE LEE, RENE LUNA and JAVIER ROBLES, individually on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LUXOTTICA RETAIL NORTH AMERICA, INC., an Ohio corporation,<br><br>Defendant. | Case No. 10-8081 |

## COMPLAINT

Plaintiffs Terrance Barker, Michele Lee, Rene Luna, and Javier Robles, individually on behalf of themselves and all other persons similarly situated, by their attorneys, Vincent T. Borst, Robert M. Winter, Andrés J. Gallegos and Richard Lee Stavins of Robbins Salomon & Patt, Ltd., complain of Defendant Luxottica Retail North America, Inc., an Ohio corporation, as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188. Plaintiffs' claims arise under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*

2. Venue is proper in this district because Defendant caused and continues to cause injuries to Plaintiffs in this district and Defendant resides in this district.

## THE PARTIES

3. Terrance Barker is a quadriplegic who depends upon the use of a wheelchair, and is a person with a disability within the meaning of all applicable statutes. Terrance Barker resides in Country Club Hills, Illinois.

4. Michele Lee is a quadriplegic who depends upon the use of a wheelchair, and is a person with a disability within the meaning of all applicable statutes. Michele Lee resides in Chicago, Illinois.

5. Rene Luna is a quadriplegic who depends upon the use of a wheelchair, and is a person with a disability within the meaning of all applicable statutes. Rene Luna resides in Chicago, Illinois.

6. Javier Robles is a quadriplegic who depends upon the use of a wheelchair, and is a person with a disability within the meaning of all applicable statutes. Javier Robles resides in Edison, New Jersey.

7. Luxottica Retail North America, Inc., ("Luxottica") is an Ohio Corporation. Luxottica operates more than 2,600 optometry facilities in the United States of America, doing business and providing optical examinations to the public under the names LensCrafters, Pearle Vision, Sears Optical and Target Optical (collectively "Luxottica Brands"), among others.

## CLASS ALLEGATIONS

8. Pursuant to the Fed. R. Civ. P. 23(a), the Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated. The class the Plaintiffs seek to represent is composed of all disabled persons with ambulatory impairments who depend upon the use a wheelchair and are unable to obtain optometry services and care at the optical care facilities of Luxottica, and the Luxottica Brands, because of Luxottica's failure to comply with the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

9. The persons in the class are so numerous that joinder of all persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and the Court. Approximately 2.7 million disabled people ages 15 and older depend upon the use of wheelchairs in the United States. Plaintiffs are informed and believe that thousands of

individuals with ambulatory disabilities who depend upon the use of wheelchairs seeking optometry services from Luxottica have suffered and will continue to suffer systematic discrimination.

10. There are common questions of law and fact involved that affect the parties to be represented in that they are all being denied, or will be denied their civil rights of full and equal enjoyment of the optometry services and care from Luxottica, due to the barriers described herein.

11. The claims of the Plaintiffs are typical of the claims of the class because the Plaintiffs are similarly affected by Luxottica's failure to provide the legally required access to their facilities and optometry services throughout the United States.

12. The Plaintiffs are adequate class representatives because they are directly impacted by Luxottica's failure to provide access to vision care services, facilities and equipment throughout the United States. The interests of the Plaintiffs are not antagonistic to or otherwise in conflict with the interests of the class as a whole. The attorneys representing the class are experienced in representing clients in class actions and class action civil rights claims.

13. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Luxottica has acted and/or failed to act on grounds applicable to the class as a whole, making final declaratory and injunctive relief for the class as a whole superior to all other methods of disposition.

14. Class certification is appropriate under Fed. R. Civ. P. 23 (b)(3) because questions of law and fact common to class members predominate over other available methods for the fair and efficient adjudication of this litigation.

15. Upon information and belief, the interests of members of the class in individually controlling the prosecution of a separate action is low, in that most class members would be

unable to individually prosecute an action because the amounts at stake for individuals, while significant, are relatively small for most or all of the class members contrasted with the costs of prosecution. Concentrating litigation in a single forum will promote judicial efficiency by resolving common questions of law and fact in a single forum instead of across multiple courts.

16. A class action would be manageable. Individualized litigation presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims that might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. References to Plaintiffs shall be deemed to include each named Plaintiff and each member of the class, unless otherwise indicated.

## **DEFENDANT'S CONDUCT**

17. A regularly scheduled comprehensive eye examination is critical to maintaining healthy eyes and healthy vision. Optometrists are qualified to administer such exams and treat many diseases and disorders of the eye. An eye exam is low cost and of high benefit to the patient. Economic, medical and moral benefits exist for every person to have an annual eye exam by an optometrist.

18. Luxottica has a pattern and practice of failing to provide full and equal access to eye exams by ambulatory impaired disabled individuals who depend upon the use of wheelchairs who are seeking vision care services, by failing to remove architectural barriers necessary that prevent full and equal enjoyment of, and access to its eye examination services, failing to provide or make available auxiliary aids and services, and failing to make reasonable modifications to its policies, practices and procedures to ensure that disabled people with

ambulatory impairments who depend upon the use of wheelchairs are provided with equal access to the facilities, equipment and services Luxottica provides to its customers.

19. As a consequence of the aforesaid conducts, Luxottica does not provide full and equal access for disabled people with ambulatory impairments who use wheelchairs. Luxottica's employees and staff members are not able to address these barriers and provide optometry services on an equal basis to disabled persons with ambulatory impairments who depend on the use of wheelchairs, and thus such disabled are unable to secure comprehensive eye care services at Luxottica's facilities that are readily available to non-disabled persons without ambulatory impairments.

20. Luxottica does not provide, and it denies and continues to deny, access for disabled individuals with ambulatory impairments who depend upon the use wheelchairs by creating and failing to remove architectural barriers in the following ways:

  a. The examination chairs do not lower to facilitate the transfer of disabled ambulatory impaired persons from their wheelchairs into the eye exam chairs;

  b. No other safe means are provided to lift disabled ambulatory impaired persons from their wheelchairs onto examination chairs, such as portable lift systems or fixed overhead lift systems;

  c. The examination chairs are fixed to the floor and cannot be moved to permit disabled ambulatory impaired persons in wheelchairs to access the eye examination equipment while seated in their wheelchairs;

  d. The examination equipment cannot be moved sufficiently to accommodate an eye examination for a person in a wheelchair;

  e. Examination rooms are too small to accommodate wheelchair access and use;

  f. Disabled persons with ambulatory impairments who depend upon the use of wheelchairs are turned away from facilities or dissuaded from seeking optometry services from Luxottica when they inquire telephonically about the availability of vision care services for disabled persons who depend on the use of wheelchairs; and

      g.      Luxottica otherwise has denied access to disabled ambulatory impaired individuals who depend upon the use of wheelchairs.

21. The pervasive barriers to access described above make it more difficult and expensive for disabled persons with ambulatory impairments who use wheelchairs to receive adequate vision screening and care. Luxottica's failure to remove such architectural access barriers throughout the Luxottica Brands prevents full and equal access, subjects disabled people with ambulatory impairments who use wheelchairs to embarrassing, humiliating, and frustrating experiences, and increases the likelihood that they will not be able to secure eye care services that are available to people without ambulatory impairments.

22. Each Luxottica Brand is a public accommodation that is covered by Title III of the ADA. 42 U.S.C. §12181(7)(F); 28 C.F.R. §36.104.

## EXPERIENCES OF THE NAMED PLAINTIFFS

23. Terrance Barker is a person with an ambulatory impairment. Terrance sustained a spinal cord injury to his 3rd and 5th cervical vertebra on or about January 11, 2003, resulting in quadriplegia. As a result, he is dependent upon the use of a wheelchair. In or about January of 2010, Terrance's mother contacted Defendant's Sears Optical facility and Defendant's LensCrafters facility in Matteson, Illinois, to inquire about a comprehensive vision exam. Employees at each facility informed her that unless Terrance could move himself from his wheelchair to the examination chair, he would be unable to receive a comprehensive eye examination. Subsequently, Terrance's mother contacted the Defendant's LensCrafters facility located in Orland Park, Illinois, to inquire about a vision examination for Terrance, but was again informed that he could not be examined unless he could move from the wheelchair to the examination chair. Terrance has been required to seek vision services from an independent optometrist who makes house calls and can examine him in his home. On November 4, 2010,

Terrance called Defendant's Pearle Vision eye care facilities at 18234 South Halsted Street in Homewood, Illinois, and at 14702 S. Cicero Ave. in Midlothian, Illinois, to see if he could receive an eye examination. Both facilities are close to his house. After explaining that he was in a wheelchair and unable to independently transfer, he was told by employees of Luxottica that he would have to get out of his wheelchair in order to obtain an eye examination. Still attempting to find an optometry facility that would not deny him services, on November 10, 2010, Terrance called Defendant's Target Optical at 13460 S. Archer Ave. in Lemont, Illinois, but similar to the responses he received from staff at the Pearle Vision facilities, he was told that he would have to get out of his wheelchair to be examined there, and was then provided the contact information for a private optometry practice in Orland Park, Illinois which may be able to examine him.

24. Michele Lee is a person with an ambulatory impairment. Michele sustained a spinal cord injury to her 6th cervical vertebra on or about May 13, 2003, resulting in quadriplegia. As a result, she is dependent upon the use of a wheelchair. Michele obtained Lasik surgery in August 2008. On November 5, 2010, Michele called Luxottica's LensCrafters, Pearle Vision, Sears Optical and Target Optical eye care centers close to where she lives in Chicago, Illinois, to inquire whether their eye examination services were accessible and to obtain an eye examination. Luxottica's LensCrafters, Pearle Vision and Sears Optical facilities denied Michele service. After explaining that she was in a wheelchair and unable to independently transfer, she was told by staff members at both LensCrafters at 225 North Michigan Ave., in Chicago, Illinois, and at Sears Optical at 1254 S. Canal in Chicago, Illinois, that she would not be able to obtain an eye examination as their exam rooms are too small to accommodate a wheelchair. When she called Pearle Vision at 410 N. Michigan Ave. in Chicago, Illinois, she was told by a staff member that she could not be examined there as they were not equipped to perform exams on patients in their

wheelchairs. Staff at Target Optical, at 2656 N. Elston, told Michele when she called they were not sure if she could obtain an eye examination there.

25. Rene Luna is a person with an ambulatory impairment. Rene sustained a spinal cord injury to his 5th cervical vertebra in or about March, 1977 resulting in quadriplegia. As a result, he is dependent upon the use of a wheelchair. Rene has required prescription eye glasses for many years. In or about June and July of 2007, seeking vision examination services, Rene visited Luxottica's LensCrafters optical facility at 2736 N. Clark Street in Chicago, Illinois. That facility was unable to provide a comprehensive eye exam for Rene because he was unable to transfer himself from his wheelchair onto the exam chair. Luxottica's employees at that facility failed and refused any assistance to transfer Rene from his wheelchair onto the exam chair. The optometrist at that facility refused to perform a comprehensive vision exam. In or about 2007, Rene sought a vision exam at Defendant's Sears Optical facility on Canal Street in Chicago, Illinois. The vision exam was performed, although performed manually from the wheelchair using trial lens glasses with interchangeable lenses, rather than the standard phoropter procedure available to individuals who are not ambulatory impaired. On December 6, 2010, Rene attempted again to receive services from Luxottica's LensCrafters facility at 2736 N. Clark Street in Chicago, Illinois. He called that facility requesting an appointment to receive an eye examination and explained that he uses a wheelchair and is unable to independently transfer from his wheelchair onto their exam chair. He was told by a Luxottica employee at that facility that they can try to examine him while he remained in his wheelchair but the examination may not be 100% effective and suggested that he may want to make an appointment with an ophthalmologist or go to a hospital for an examination. On December 6, 2010, Rene also called Defendant's Target Optical at 2656 N. Elston Ave., in Chicago, Illinois, inquiring about obtaining an eye examination. After explaining that he utilized a wheelchair and his inability to independently

transfer, a Luxottica employee at that facility, after consulting with the on-site optometrist, informed him that if he could not get out of his wheelchair he could not get examined there and that he must go elsewhere. To date, Rene has been unable to obtain a comprehensive eye examination equal to the services provided to non-disabled individuals.

26. Javier Robles is a person with an ambulatory impairment. Javier sustained a spinal cord injury to his 5th cervical vertebra in or about April, 1983, resulting in quadriplegia. As a result, he is required to use a wheelchair. Javier has been wearing prescription eyewear for many years. Javier was also diagnosed with Type 2 Diabetes in or about October of 2008, which makes the ability to obtain comprehensive eye exams particularly vital because diabetes increases the risk of vision problems. In or about October of 2010, Javier contacted the two optometry service providers closest to his residence, Defendant's Sears Optical facility in Woodbridge, New Jersey, and Defendant's Pearle Vision facility in Iselin, New Jersey. Representatives of each facility informed Javier that he would be unable to obtain a complete eye exam unless he could independently transfer himself from his wheelchair onto the examination chair. As he was unable to do so, he was unable to obtain optometry services at locations convenient to his residence. On November 10, 2010, Javier called Defendant's Target Optical and LensCrafters facilities close to his house to also inquire whether their facilities and their eye examination services were wheelchair accessible. He called Target Optical facilities located at 1515 US Highway 22 in Watchung, New Jersey, and at 621 W Edgar Rd. in Linden, New Jersey. He called LensCrafters facilities at 55 Parsonage Road in Edison, New Jersey, and at 161 Woodbridge Center Dr. in Woodbridge New Jersey. Luxottica employees at the Target Optical in Watchung told him that if he could not transfer, and if he did not have assistance to help him transfer, there was no way to get an eye examination there without being in the examination chair. Similarly, when he called Target Optical in Linden, he was told by a

Luxottica employee that without transferring, he could not get an eye examination there. When he called the LensCrafters in Edison, he was told by a Luxottica employee that he needed to be transferred onto the examination chair in order to receive an exam. The Luxottica employee offered possible assistance with transferring onto the examination chair, but informed Javier there was no guarantee they could help, and then told Javier it would probably be better if he went to an ophthalmologist. Luxottica employees at the LensCrafters in Woodbridge also told him he would need to get onto the exam chair, and stated that on Tuesdays, Fridays and Saturdays there might be people available to assist him to transfer, but not on other days.

## THE STATUTE AND REGULATIONS

27. At all times relevant, there was in full force and effect a statute known as the Americans with Disabilities Act, 42 U.S.C. §§ 12101 – 12189, (the "ADA") and its implementing regulations, 28 C.F.R. §§ 36.101 – 36.608, which provide in pertinent part as follows:

   a. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. §12182(a); 28 C.F.R. §36.201.

   b. It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. §12182(b) (1)(A)(i); 28 C.F.R. §36.202(a).

   c. It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. 42 U.S.C. §12182(b) (1)(A)(ii); 28 C.F.R. §36.202(b).

    d.    It shall be discriminatory to impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered. 42 U.S.C. §12182(b) (2)(A)(i); 28 C.F.R. §36.301(a).

    e.    It shall be discriminatory to fail to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. §12182(b) (2)(A)(ii); 28 C.F.R. §36.302(a).

    f.    It shall be discriminatory to fail to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden. 42 U.S.C. §12182(b) (2)(A)(iii); 28 C.F.R. §36.303(a).

    g.    It shall be discriminatory to fail to remove architectural barriers that are structural in nature in existing facilities where such removal is readily achievable. 42 U.S.C. §12182(b) (2)(A)(iv); 28 C.F.R. §36.304(a).

## DEFENDANT'S VIOLATIONS

28.    Luxottica's acts and omissions alleged herein violated and continue to violate the ADA and its implementing regulations in one or more or all of the following manners:

    a.    Luxottica has discriminated against Plaintiffs and the class members by denying them the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the facilities owned, operated and/or contracted for use by Luxottica and Luxottica Brands.

    b.    Luxottica has discriminated against Plaintiffs and the class members by denying them the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Luxottica Brands.

  c. Luxottica has discriminated against Plaintiffs and the class members by offering or affording them services that are not equal to those services afforded to other individuals with ambulatory impairments.

  d. Luxottica has discriminated against Plaintiffs and the class members by imposing or applying eligibility criteria that screen out or tend to screen out disabled individuals with ambulatory impairments who cannot independently transfer from their wheelchairs onto examination chairs where such criteria is not necessary for the provision of optometry services.

  e. Luxottica has discriminated against Plaintiffs and the class members by failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its goods, services and facilities to Plaintiffs and the class members where such modifications would not fundamentally alter the nature of its goods, services or facilities.

  f. Luxottica has discriminated against Plaintiffs and the class members by failing to take such steps as may be necessary to ensure that Plaintiffs and the class members are not excluded, denied services or otherwise treated differently than other individuals because of the absence of auxiliary aids where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in an undue burden.

  g. Luxottica has discriminated against Plaintiffs and the class members by failing to remove architectural barriers that are structural in nature in existing facilities where such removal is readily achievable.

  h. Luxottica has otherwise discriminated against Plaintiffs and the class members.

29. Luxottica's conduct constitutes ongoing and continuing violations of the ADA. Unless restrained from doing so, Luxottica will continue to violate the ADA. This conduct, unless enjoined, will continue to inflict injuries on Plaintiffs and the members of the class for which Plaintiffs and the class will have no adequate remedy at law. Therefore, pursuant to section 308 of the ADA (42 U.S.C. § 12188), Plaintiffs and members of the class are entitled to injunctive relief.

30. Plaintiffs and members of the class are entitled to reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 12205.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and members of the class pray for the following relief:

a. A preliminary injunction and a permanent injunction, prohibiting Luxottica from violating the ADA, 42 U.S.C. §§ 12181, *et seq.*, and compelling Luxottica to comply with the ADA;

b. A declaration that Luxottica is operating in a manner which discriminates against disabled individuals who are ambulatory impaired who depend upon the use of wheelchairs and which fails to provide access for persons with disabilities as required by law;

c. An order certifying the case as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), and appointing Plaintiffs as class representatives and their attorneys as class counsel;

d. An award of attorneys' fees and costs;

e. Such other relief as the Court deems just.

          TERRANCE BARKER, MICHELE LEE, RENE LUNA, and JAVIER ROBLES, individually on behalf of themselves and all other persons similarly situated,

By:   /s/ Vincent T. Borst
       One of Their Attorneys

Vincent T. Borst (ARDC No. 06192904)
Robert M. Winter (ARDC No. 03122228)
Andrés J. Gallegos (ARDC No. 6212168)
Richard Lee Stavins (ARDC No. 02710099)
ROBBINS, SALOMON & PATT, LTD.
25 East Washington Street, Suite 1000
Chicago, Illinois 60602
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
vborst@rsplaw.com
rwinter@rsplaw.com
agallegos@rsplaw.com
rstavins@rsplaw.com